UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LISA ANDRUS,                        )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )        Case No. 4:09CV990 CDP
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security     )
                                    )
        Defendant.                  )

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the

Commissioner's final decision denying plaintiff Lisa Andrus's application for

disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§

401, et seq. In her complaint, Andrus claims that she is disabled because of

degenerative disc disease and obesity. The Administrative Law Judge found that

Andrus is not disabled and therefore not eligible for benefits, and Andrus has

appealed that decision. Because I conclude that the Administrative Law Judge's

decision is supported by substantial evidence, I will affirm the decision.

## Procedural History

On April 9, 2007, Andrus filed an application for disability insurance

benefits. The claim was denied on June 13, 2007. On June 25, 2007, Andrus filed

a timely request for hearing by an ALJ.  On February 14, 2008, the ALJ issued a ruling from the January 15, 2008, hearing.  The ALJ ruled that Andrus was not disabled as defined in the Social Security Act.  On May 20, 2009, the Appeals Council denied plaintiff's request for review.  Thus, the ALJ's ruling stands as the final decision of the Commissioner.

## Testimony Before the Administrative Law Judge

Andrus testified that she lives with her husband and 18 year old son.  (Tr. 21).  She has a twelfth grade education and some additional training in administration.  (Tr. 21).  Andrus also stated that her prior work experience included jobs as an office manager and a daycare teacher.  (Tr. 22).

Andrus testified that she had multiple ailments including degenerative disc disease, herniated discs, high blood pressure, asthma, overactive bladder, and obesity.  (Tr. 23, 28).  She has constant low back pain and difficulty maintaining her balance.  (Tr. 24).  Andrus stated that she can walk approximately 50 yards with her cane before she needed to rest.  (Tr. 24-25).  Andrus also described difficulty with concentration and memory as a result of her medications.  (Tr. 35-36).  She stated she was 5'6" tall and weighed 380 pounds.  (Tr. 27).  Andrus smokes a little less than two packs of cigarettes per day.  (Tr. 30).  Andrus said she can carry up to 20 pounds.  (Tr. 30).

Andrus described her daily activities. She is able to shower and dress herself, do light housework, sweep and mop floors, use a computer, and fix simple meals. (Tr. 30-33). Andrus can also drive short distances and fold laundry. (Tr. 37-38). Andrus testified that she cannot travel her mother's nursing home without assistance or attend parent teacher conferences as a result of her condition. (Tr. 37-38).

## **Medical Records**

Andrus claims that she qualifies for disability based on degenerative disc disease and high blood pressure. (Tr. 104). Andrus is a 52 year old female and she alleges that her disability began on March 30, 2007. (Tr. 81).

On August 14, 2003, Andrus had a MRI of her spine. (Tr. 294-95). This test revealed significant degenerative disc narrowing at L3-4 with moderate disc protrusion or focal disc herniation with compression of the right anterior thecal sac and encroachment of the inferior right L3-4 foramen. (Tr. 294-95). The MRI also showed a desiccated disc at L4-t with mild diffuse disc bulge and focal posterior central disc protrusion or small focal disc herniation with mild impression of the anterior thecal sac. (Tr. 294-95). In September 2003, Andrus saw Dr. Scodary for her back pain. (Tr. 248-49). She told the doctor that her back pain started approximately three years ago. (Tr. 248-49). On September 17, 2003, plaintiff

underwent steroid injections from Dr. Smith to treat her degenerative disc disease. (Tr. 250). Andrus had two more injections for treatment over the next month, with the doctor recording improvement in his progress notes on September 24 and October 1. (Tr. 253-54).

On November 12, 2003, a Nerve Conduction Study revealed mild left S1 radiculopathy with denervation in the distribution of the S1 root. (Tr. 261-64). Andrus underwent four lumbar/sacral nerve root blocks between October 29 and December 27, 2003. Dr. Smith noted that her pain was reduced as a result of the treatment. (Tr. 257). He further opined that the plaintiff's biggest problem may be her weight. (Tr. 259).

Andrus was prescribed morphine tablets beginning on February 4, 2005, until December 11, 2007. (Tr. 158-207).

On August 12, 2005, Andrus saw Dr. Campbell for pain in her leg and back. (Tr. 302). Campbell noted that motion of Andrus's lumbar spine is markedly reduced in all planes with obvious discomfort on all movements. (Tr. 302). He also stated that her asthma is complicated by her smoking and he recommended she discontinue use. (Tr. 302). Dr. Campbell issued Andrus a handicapped parking placard. (Tr. 302).

On January 9, 2006, Andrus sought treatment from Dr. Campbell for

cellulitis of her left leg. (Tr. 224). The doctor instructed her she should elevate her leg as much as possible, and that he preferred her to stay off of it until she had significant improvement. (Tr. 224).

On March 23, 2007, Dr. Campbell noted that Andrus's blood pressure was elevated, and that her weight was approaching 400 pounds. (Tr. 216). He also stated that she had quite a bit of pitting edema in her lower extremities. (Tr. 216). The doctor instructed Andrus to limit her sodium intake and discontinue nicotine use. (Tr. 216). Andrus informed Dr. Campbell that she was applying for disability benefits because of her low back pain and peripheral neuropathy. (Tr. 216).

On April 27, 2007, Andrus informed Dr. Campbell that she was "able to tell a big difference" in her edema from medication. (Tr. 214). Dr. Campbell noted that she had minimal if any ankle edema. (Tr. 214).

On May 29, 2007, Dr. Leung performed a consultative examination of Andrus at the request of the Disability Determination Services. (Tr. 234-36). Andrus informed Dr. Leung that her medications helped her pain. (Tr. 234). Andrus stated that she was able to lift between 10 and 20 pounds. (Tr. 234). Andrus also stated that she continued to smoke two packages of cigarettes per day. (Tr. 235). Andrus had no muscle atrophy. (Tr. 236). Dr. Leung found that her

lumbar range of motion was slightly reduced. (Tr. 238). He also stated that her

memory and concentration were within normal limits. (Tr. 235). Andrus had a

positive straight leg raise test in the supine position, but a negative straight leg test

in the seated position. (Tr. 238). Dr. Leung noted that Andrus is morbidly obese

and struggles with unassisted movement. (Tr. 236). Dr. Leung diagnosed Andrus

with hypertension and lumbar degenerative disc disease. (Tr. 236).

On July 2, 2007, Dr. Campbell prescribed a footrest wheelchair for

Andrus's disc degeneration. (Tr. 293). The wheelchair was issued as a lifetime

prescription. (Tr. 293).

On December 12, 2007, Andrus saw Dr. Campbell to have her blood

pressure checked. (Tr. 297). Dr. Campbell once again requested that Andrus stop

smoking. (Tr. 297). Andrus stated that if she could find a way to lose weight she

would quit smoking. (Tr. 297).

## Legal Standard

The court's role on review is to determine whether the Commissioner's

findings are supported by substantial evidence on the record as a whole. Gowell

v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a

preponderance, but is enough so that a reasonable mind would find it adequate to

support the ALJ's conclusion. Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir.

2000).  As long as there is substantial evidence on the record as a whole to support

the Commissioner's decision, a court may not reverse it because substantial

evidence exists in the record that would have supported a contrary outcome, id., or

because the court would have decided the case differently.  Browning v. Sullivan,

958 F.2d 817, 822 (8th Cir. 1992).  In determining whether existing evidence is

substantial, a court considers "evidence that detracts from the Commissioner's

decision as well as evidence that supports it." Singh v. Apfel, 222 F.3d 448, 451 (8

th Cir. 2000) (quoting Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the

Court is required to review the administrative record as a whole and to consider:

(1)     the credibility findings made by the Administrative Law Judge;

(2)     the education, background, work history, and age of the claimant;

(3)     the medical evidence from treating and consulting physicians;

(4)     the plaintiff's subjective complaints relating to exertional and non-
        exertional impairments;

(5)     any corroboration by third parties of the plaintiff's impairments; and

(6)     the testimony of vocational experts when required which is based
        upon a proper hypothetical question.

Brand v. Secretary of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th

Cir. 1980).

Disability is defined in the social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death of which has lasted or can be expected to last for a continuous period of not less than twelve months. § 42 U.S.C. 416(i)(1); § 42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R. 404.1505(a); § 20 C.F.R. 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five-step procedure.

First, the Commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical of mental ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in § 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or medical facts alone, and the claimant has a severe impairment, the

Commissioner review whether the claimant can perform his past relevant work. If the claimant can perform past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. § 20 C.F.R. 404.1520; § 20 C.F.R. 416.920.

If the claimant demonstrates that she has an impairment or combination of impairments that do not meet or equal an impairment listed in the regulations but which preclude her from performing her last regular work, the burden shifts to the Commissioner to show the existence of some other type of work that an individual with the claimant's impairments is capable of performing. Foreman v. Callahan, 122 F.3d 24, 25 (8th Cir. 1997); Butler v. Secretary of Health and Human Servs., 850 F.2d 425, 426 (8th Cir. 1988). If the claimant has solely exertional impairments, the ALJ may apply the Medical-Vocational Guidelines contained in 20 C.F.R., Subpart P, Appendix 2, to meet this burden. Foreman, 122 F.3d at 25. When significant nonexertional limitations exist, the ALJ must call a vocational expert to testify to the existence of jobs that a person with the claimant's impairments is capable of performing. Id. at 26; Talbott v. Bowen, 821 F.2d 511, 515 (8th Cir. 1987). However, use of the guidelines is proper if the ALJ explicitly

discredits complaints of pain for a legally sufficient reason.  See Reynolds v.

Chater, 82 F.3d 254, 258 (8th Cir. 1996); Carlock v. Sullivan, 902 F.2d 1341,

1343 (8th Cir. 1990).

When evaluating evidence of pain or other subjective complaints, the ALJ is

never free to ignore the subjective testimony of the plaintiff, even if it is

uncorroborated by objective medical evidence.  Basinger v. Heckler, 725 F.2d

1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's

subjective complaints when they are inconsistent with the record as a whole.  See,

e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  In considering the

subjective complaints, the ALJ is required to consider the factors set out by

Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating
> and examining physicians relating to such matters as: (1) the objective
> medical evidence; (2) the subjective evidence of the duration, frequency,
> and intensity of plaintiff's pain; (3) any precipitating or aggravating factors;
> (4) the claimant's daily activities; (5) the dosage, effectiveness and side
> effects of any medication; and (6) the claimant's functional restrictions.

Id. at 1322.

## The ALJ's Findings

The ALJ found that Andrus was not disabled within the meaning of the

Social Security Act.  He issued the following specific findings:

1.    Andrus meets the insured status requirements of the Social Security Act through September 19, 2006.

2.    Andrus has not engaged in substantial gainful activity since September 19, 2006 (20 C.F.R. §§ 404.1520(b) and 404.1571 <u>et seq.</u>).

3.    Andrus has the following severe impairments: degenerative disc disease and obesity (20 C.F.R. § 404.1520(c)).

4.    The medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

5.    Andrus has the residual functional capacity to lift or carry ten pounds occasionally and less than ten pounds frequently, sit six hours in an eight-hour day, and stand and/or walk a total of two hours in an eight-hour day.  She has been able to understand, remember and carry out simple instructions, but not complex instructions (due to alleged side effects from medication).  This constitutes a wide range of unskilled sedentary work.

6.    Andrus's allegations of pain and symptoms were not entirely credible.

7.    Andrus is unable to perform past relevant work (20 C.F.R.§ 404.1565).

8.    Andrus is 49 years old, which is defined as a younger individual (20 C.F.R. § 404.1563).

9.    Andrus has more than a high school education (20 C.F.R. § 404.1564).

10.   Andrus does not have any transferable skills (20 C.F.R. § 404.1568).

11.   Andrus has the residual functional capacity to perform a wide range of unskilled sedentary work.

12.    Andrus is qualified to work in a significant number of jobs in the national economy (20 C.F.R. §§ 404.1560(c) and 404.1566).

13.    Andrus is not disabled as defined by the Social Security Act (20 C.F.R. § 404.1520(g)).

The ALJ noted that no physician stated that Andrus was disabled.  (Tr. 12). The ALJ also found that the claimant was not entirely credible, as she has engaged in substantial gainful activity for most of the time since her low back pain began (Tr. 12).   Further, the ALJ stated that Andrus's ability to drive is inconsistent with her claims of incapacitating drowsiness and concentration problems. (Tr. 12). Evidence demonstrated that Andrus is able to perform light housework, which conflicts with her claims of mobility impairment.  (Tr. 12).  Overall, the ALJ concluded that Andrus's alleged symptoms did not preclude her from unskilled sedentary work.  (Tr. 13).

## Discussion

Andrus raises three issues on appeal from the final decision denying disability.  First, she claims that the ALJ improperly relied upon the medical-vocational GRIDs guidelines in making a determination of  not disabled. Specifically, Andrus argues that a vocational expert should have testified regarding her residual functional capacity.  Second, Andrus claims that the ALJ failed to consider the side effects and dosage of morphine.  Finally, Andrus

contends that the ALJ failed to properly consider obesity in determining her residual functional capacity.

Non-exertional limitations include those "other than [limitations] on strength but which nonetheless reduce an individual's ability to work." <u>Sanders v. Sullivan</u>, 983 F.2d 822, 823 (8th Cir. 1992). Examples include "mental, sensory, or skin impairments," as well as impairments which result in "postural and manipulative limitations or environmental restrictions." 20 C.F.R. pt. 404, subpt. P, App. 2.

Where a claimant suffers from both exertional and non-exertional injuries, Eighth Circuit case law states:

> [Where] the claimant suffers from a combination of exertional and non-exertional impairments and the Guidelines indicate that he or she is not entitled to a finding of disability based solely on exertional impairments, the ALJ must then consider the extent to which the claimant's work capacity is further diminished by his or her non-exertional impairments. Where the claimants relevant characteristics differ in any material respect from those characteristics contemplated by the Guidelines, the Guidelines may not be applied. Instead, the Secretary must produce expert vocational testimony or other similar evidence to establish that there are jobs available in the national economy for a person with the claimant's characteristics.

<u>Thompson v. Bowen</u>, 850 F.2d 346, 349 (8th Cir. 1988) (quoting <u>Tucker v. Heckler</u>, 776 F.2d 793, 795-96 (8th Cir. 1985)). Testimony from a vocational expert is not always required: "[w]hen a claimant's subjective complaints of pain 'are explicitly discredited for legally sufficient reasons articulated by the ALJ,' the

Secretary's burden [at the fifth step] may be met by use of the [Medical-Vocational Guidelines]." <u>Naber v. Shalala</u>, 22 F.3d 186, 189-90 (8th Cir. 1994) (quoting <u>Hutsell v. Sullivan</u>, 892 F.2d 747, 750 (8th Cir. 1989)).  Also, an ALJ may use the Guidelines "even though there is a non-exertional impairment if the ALJ finds, and the record supports the finding, that the non-exertional impairment does not diminish the claimant's functional capacity to perform the full range of activities listed in the Guidelines." <u>Lucy v. Chater</u>, 113 F.3d 905, 908 (8th Cir. 1997); <u>Thompson</u>, 850 F.2d at 349-50.  However, even under these circumstances, the Guidelines provide only a "framework" for consideration of the individual's functional capacity, and "full consideration must be given to all of the relevant facts" in the individual's case.  20 C.F.R. pt. 404, subpt. P, App. 2.

If the ALJ properly discredits a plaintiff's claims, he can rely on the medical-vocational guidelines.  <u>Naber</u>, 22 F.3d at 189-90.  The ALJ must decide if the claimant's complaints of pain are consistent with his or her prior work record and the observations of third parties and examining physicians regarding the factors articulated in  <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination using the factors set forth in <u>Polaski</u>.  <u>Baker v. Apfel,</u> 159 F.3d 1140, 1144 (8th Cir. 1998); <u>Cline v. Sullivan</u>, 939 F.2d 560, 565 (8th

Cir. 1991).

I.     <u>The ALJ Failed to Obtain Evidence From a Vocational Expert</u>

Andrus's first point on appeal is that the ALJ failed to obtain evidence from a vocational expert. Specifically, she claims that the ALJ improperly relied solely on the medical-vocational guidelines and should have required testimony from a vocational expert. A vocational expert is generally required to testify regarding a claimant's non-exertional limitations, however, when the claimant's allegations of pain "are appropriately discredited for legally sufficient reasons, such as inconsistencies in the record evidence, the ALJ may employ the guidelines to direct a determination of not-disabled." <u>Cline</u>, 939 F.2d at 565; <u>see</u> <u>Carlock</u>, 902 F.2d at 1343 ("[i]t is well established that a sufficient basis exists to discount subjective complaints of pain where the complaints are inconsistent with the record as a whole.").

The ALJ had multiple reasons to discount Andrus's allegations. The ALJ addressed her pain allegations in detail. (Tr. 12). When considering subjective complaints, the ALJ is required to consider the factors set out by <u>Polaski v. Heckler</u>. <u>Polaski</u>, 739 F.2d at 1322. The ALJ addressed several of the <u>Polaski</u> factors in his report. He found that the claimant's daily activities were "at odds" with her asserted inability to stand any longer than a few minutes. (Tr. 12). The

ALJ noted that Andrus's testimony indicated constant and severe pain, yet she could carry 20 pounds, treatment had somewhat helped her pain, and that she did not claim obesity as an impairment on her disability application. (Tr. 12).

Regarding the side effects of medication, the ALJ stated that Dr. Leung's exam demonstrated normal memory and concentration abilities. (Tr. 12). The ALJ also determined that Andrus physician, Dr. Campbell, did not find any muscoskeletal or neurological defects and that Dr. Leung's report indicated that Andrus could walk 50 feet without assistance. (Tr. 12). While the Polaski factors must be considered, the ALJ is not required to "include a discussion of how every Polaski factor relates to the claimant's credibility"as long as "the analytical framework is recognized and considered." Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007); see Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004).

The ALJ also found significant that Andrus allegedly had severe pain since 2000, yet she was able to work until 2006 with her condition. (Tr. 12, 104-05, 248). Further, the record is void of any evidence of her condition seriously worsening during that period. (Tr. 12). Andrus's credibility also was at issue on multiple occasions when her physicians recommended she discontinue smoking and alter her diet in order to improve her condition, yet she repeatedly ignored her physicians requests. (Tr. 30, 216, 248, 259, 265, 297, 301, 302). A patient's

repeated noncompliance with doctor's orders is relevant to a credibility determination. See Brown v. Barnhart, 390 F.3d 535, 541-42 (8th Cir. 2004). Thus, the ALJ's reliance on the Guidelines was appropriate as he expressly discredited Andrus's claims of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 895 (8th Cir. 2006).

II.     The ALJ Failed to Consider Morphine Use

Andrus's second point on appeal is that the ALJ failed to consider her morphine prescription. Specifically, she alleges a failure to consider the dosage and side effects of morphine consistent with the decision in Cox v. Apfel, 160 F. 3d 1203 (8th Cir. 1998). In Cox, the claimant had undergone three surgeries for her back pain. Id. at 1205. The claimant's morphine was administered through a pump that was implanted in her spine and the doses of treatment were steadily increased during her treatment. See id. at 1208. Although the court in Cox stated "[n]o determination regarding disability can be made without an investigation into the impact of the patient's dependence and the side effects of increasing doses of the drug,"Andrus's case is distinguishable. Id. at 1209. While the court in Cox focused on the claimant's increasing morphine dosage and surgery, Andrus used a constant dosage and took the medication in tablet form. Id. at 1209; (Tr. 158-207). Further, the ALJ did consider pain and morphine usage in determining

plaintiff's limitation to: "carry out simple instructions, but not complex instructions (due to alleged side effects from medication)."  (Tr. 11).

The ALJ found no evidence of complaints about morphine side effects in the notes from treating physicians.  (Tr. 12).  Additionally, Dr. Leung stated that Andrus had normal memory and concentration abilities during an examination. (Tr. 12, 235).  The ALJ also determined that Andrus's ability to drive a car conflicted with her allegations of side effects.  (Tr. 12).  Thus, the ALJ properly discredited Andrus's subjective complaints as they are inconsistent with the record as a whole.  See, e.g., Battles, 902 F.2d at 660.  The ALJ determined that the plaintiff suffers from a "mental limitation," however, this does not prevent her from performing unskilled sedentary work. (Tr. 13).  The ALJ appropriately considered the effects of Andrus' medications and his conclusions in this regard are supported by the record.

III.    The ALJ Failed to Consider Obesity in Determining the RFC

Andrus's final point on appeal is that the ALJ failed to properly consider obesity when determining the claimant's RFC.  The ALJ found that obesity severely limited Andrus's ability to perform basic work activities, as he listed obesity during step two of the sequential evaluation process.  (Tr. 9-10).  During step three of the evaluation process, the ALJ determined that Andrus's impairment

or combination of impairments did not meet or exceed any of the listed

impairments. (Tr. 11). The ALJ stated that "listing 1.04, the listing for spinal

disorders, has not been met because the medical record does not show motor loss."

(Tr. 11). Listing § 1.04 states:

> 1.04    Disorders of the spine (e.g., herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc
> disease, facet arthritis, vertebral fracture), resulting in compromise of
> a nerve root (including the cauda equina) or the spinal cord. With:
>
> A.    Evidence of nerve root compression characterized by neuro-
> anatomic distribution of pain, limitation of motion of the spine,
> motor loss (atrophy with associated muscle weakness or
> muscle weakness) accompanied by sensory or reflex loss and,
> if there is involvement of the lower back, positive straight-leg
> raising test (sitting and supine)[.]

20 C.F.R. pt. 404, subpt. P, App. 1 § 1.04A.

Andrus argues that she almost meets the requirements of § 1.04A without

considering obesity, however, the record does not indicate motor loss, atrophy

with muscle weakness, or loss of motion of the spine. (Tr. 236). During an

examination, Dr. Leung found no muscle atrophy and that Andrus's lower

extremity strength was 4 or 4+/5. (Tr. 236, 238). Dr. Leung also stated that

Andrus had slightly reduced lumbar range of motion and no lumbar tenderness.

(Tr. 236, 238). While Andrus did have a positive straight leg test in the supine

position, she did not have a positive test in the sitting position also as required by listing § 1.04A. (Tr. 238). Thus, the ALJ appropriately concluded that Andrus did not meet the requirements articulated in listing § 1.04A.

Andrus also argues that if the effects of obesity are combined with her other limitations, she would be considered disabled. The only physician documented side effect to obesity was lower extremity edema, which could be controlled or possibly alleviated by medication. (Tr. 12, 214). Andrus did not initially claim obesity as an impairment when she filled out her disability application, despite the fact that she weighed well over three hundred pounds at the time. (Tr. 104). Although Dr. Leung did note that Andrus had some "difficulties moving" mostly due to "morbid obesity," such a condition is consistent with the ALJ's finding that Andrus was limited to unskilled sedentary work. (Tr. 236, 11). Andrus contends that the ALJ failed to make an express ruling on the effect of her obesity, however, an ALJ has adequately assessed impairments in combination after separately discussing "physical impairments, affective disorder[s], and complaints of pain" and then determining the claimant's ability to perform past relevant work. See Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992); see Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) ("[t]he fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall

conclusion."). In this case, the ALJ made a determination on these factors and sufficiently considered her obesity. (Tr. 10-13). Therefore, substantial evidence supports the ALJ's determination that Andrus does not have an impairment or combination of impairments that met or equaled the requirements of any listed impairment.

## Conclusion

For the aforementioned reasons, the ALJ's determination that Andrus was not disabled is supported by substantial evidence in the record as a whole. The decision should therefore be upheld.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed. A separate judgment in accord with this Memorandum and Order is entered this date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of September, 2010.